UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER DIBBLE,

        Petitioner,

                              Case Number 16-10655
v.                                      Honorable David M. Lawson

PAUL KLEE,

        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Christopher Dibble challenges his convictions of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct in a habeas corpus petition filed under 28 U.S.C. § 2254. The convictions involved the petitioner's live-in girlfriend's teenage daughter, who was thirteen years old when the sexual abuse occurred. He contends that the admission of "bad acts" evidence deprived him of a fair trial, and the application of Michigan Compiled Laws § 768.27a to his case — a statute that permits the admission of propensity evidence in certain sexual assault cases — violated the *Ex Post Facto* Clauses of the state and federal Constitutions. The State argues that the petition should be dismissed as deficient because it is unsigned and undated, it is barred by the one-year statute of limitations, the petitioner's first claim is not cognizable on habeas corpus review, and that the petitioner's *ex post facto* claim lacks merit. Because no meritorious grounds for habeas corpus relief are presented in the petition, the Court will deny it.

I.

The incidents allegedly occurred between March 2005 and January 2006. The complainant was sixteen years old when she testified at the petitioner's trial in 2008. She said that in 2003 or

2004, her mother was taking pain medication for degenerative disc disease. The medication made her mother forgetful, and it caused her to sleep much of the time.

One night in 2005, the petitioner penetrated her vagina while she was in bed. She did not say anything to him or tell him to stop what he was doing because she was afraid and did not know what was happening or would happen if she objected. Her mother was home at the time but was sleeping. On subsequent occasions, the petitioner would penetrate her vagina with his finger, rub or lick her breasts, or touch her vaginal area. The sexual activity occurred at least ten times when she was thirteen years of age.

The petitioner also became very controlling and argumentative. The complainant's school grades declined, and she became less independent. The abuse eventually stopped, and in 2007, she informed her mother about it. The two of them later reported the matter to the police. The petitioner moved out after the police showed up. The complainant never asked her mother to break up with the petitioner. Instead, she thought that it would have been better if her mother was not taking the medication.

The complainant's mother testified that in 2005, her relationship with the petitioner was strained, and she slept a lot because she was taking pain killers for her back. On a few occasions, however, she had to get up in the middle of the night and she saw the petitioner come out of the complainant's bedroom. When she would ask him what the problem was, he would say that the complainant was having a nightmare. She could tell that the complainant was afraid of the petitioner, but the complainant would not talk about the nightmares or what had happened. In October of 2007, the complainant finally told her what had happened without providing any details about the incidents.

The complainant's grandmother testified that beginning in October 2006, the petitioner, the complainant, and the complainant's mother lived with her for six months. The petitioner was very possessive of the complainant, but not the other children in the family. He would pull the complainant on his lap and kiss her on the lips almost every day even though the complainant was afraid of the petitioner and did not like him kissing her.

Kimberly Crissman, a relative of the complainant's mother, testified that in 2005 and 2006, the petitioner tried to control the complainant and would kiss the complainant on the lips. She thought that the kissing was inappropriate, but she did not talk to the petitioner about it because he was unapproachable, and she was afraid that she would not be permitted to visit the family if she said anything.

Over previous objection, the petitioner's ex-wife testified that she was married to the petitioner from 1985 to 1998, and on more than ten occasions between 1991 and 1998, the petitioner would come home drunk and force her to have sex with him. On June 6, 1998, he slapped and choked her until she gave in to his demands for oral sex. She reported that incident to the police and decided to leave the petitioner.

The son of the petitioner's ex-wife, thirty-one years old when he testified at the petitioner's trial, said — over defense objection — that in 1988 and 1989 when he was eleven years old, the petitioner would make him massage, wash, or suck the petitioner's penis. This occurred over thirty times. He eventually informed his mother and reported the abuse to the police. He changed his story at the request of his mother and the petitioner so that the petitioner would not go to jail. They promised him that the petitioner would get help and that it would never happen again. He did not disclose the abuse to anyone else because it was embarrassing and nobody's business.

Anticipating a defense of non-access, Karin Nyenhuis testified that the petitioner worked the night shift (from 11:00 p.m. to 7:00 a.m.) at Forest Hills Foods from March 21 to September 2, 2005. His regular days off were Friday and Saturday, but there were other days when he did not work.

The petitioner presented two witnesses, and he testified on his own behalf. The petitioner's sister, Angelea Gillett-Waite, testified for the defense that she never saw anything out of the ordinary take place between the petitioner and the complainant. The complainant was a "clingy" child and would often put her hands on the petitioner's shoulders, rub his arm, or give him hugs. They kissed on the lips, but their whole family did that. In 2005, the complainant's mother was taking a lot of medication and frequently fought with the petitioner, who was trying to work and take care of the complainant and her mother.

The complainant's biological father testified that his parenting time with the complainant was every other weekend, every other holiday, and two weeks in the summer. However, the schedule was flexible because he was a truck driver at the time.

The petitioner testified that in 2005, he worked nights most of the time. His relationship with the complainant's mother was terrible at the time because she was abusing her medication and would argue or complain about minor things. She threatened to turn him in for "CSC" if he did not leave, but he felt sorry for her and tried to help her as much as he could.

The petitioner maintained that his relationship with the complainant was good and that their kissing was her idea. He denied touching the complainant on her breasts or vagina or in an inappropriate manner. He also denied raping his ex-wife or inappropriately touching his ex-wife's son, but he admitted that he pleaded guilty to fourth-degree child abuse as a result of allegations that he had sexually molested the boy.

On October 31, 2008, the jury found the petitioner guilty as charged of one count of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(b)(i) (sexual penetration involving a victim thirteen, fourteen, or fifteen years old and a member of the same household), and two counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(b)(i) (sexual contact with a victim thirteen, fourteen, or fifteen years old and a member of the same household). He was sentenced to concurrent prison terms totaling 126 months to 30 years. His convictions were affirmed on direct appeal. *People v. Dibble*, No. 292492, 2010 WL 4628667 (Mich. Ct. App. Nov. 16, 2010). *lv. den.* 492 Mich. 864, 819 N.W.2d 886 (2012).

On March 19, 2013, the petitioner filed a *pro se* habeas corpus petition in the United States District Court for the Western District of Michigan. He raised the same two claims that were rejected by Michigan's appellate courts — improper admission of other-act evidence and the unconstitutional application of Michigan Compiled Laws § 768.27a to his case — and he moved for a stay of the federal proceeding while he pursued additional state remedies for one or more claims of newly-discovered evidence. The district court dismissed the petition without prejudice because the petitioner had failed to exhaust available state-court remedies for the newly-discovered claims. *See Dibble v. Berghuis*, No. 1:13-cv-292, 2013 WL 1423282 (W.D. Mich. Apr. 8, 2013).

On October 10, 2013, the petitioner filed a motion for relief from judgment in the state court, alleging that he had newly discovered evidence, the prosecution allowed the trial court to admit inadmissible evidence without first applying a balancing test, the admission of similar-acts evidence deprived him of due process, and his trial and appellate attorneys were ineffective. The trial court denied the petitioner's motion, *People v. Dibble*, No. 08-M-13837-FC (Ionia Cty. Cir. Ct. May 9, 2014), and the appellate court denied leave to appeal, *People v. Dibble*, No. 322740

(Mich. Ct. App. Nov. 7, 2014). The petitioner attempted to appeal that decision further, but the Michigan Supreme Court rejected his application because it was untimely.

Meanwhile, the petitioner moved to amend the judgment of sentence on the issue of fines, costs, and assessments, and on November 2, 2015, he moved for re-sentencing on the ground that the trial court had departed from the sentencing guidelines and imposed a fine without statutory authority. The trial court determined that the motion for re-sentencing was a second motion for relief from judgment. It affirmed its initial sentence but set aside the fine. *People v. Dibble*, No. 08-M-13837-FC (Ionia Cty. Cir. Ct. Mar. 25, 2016). The Michigan Court of Appeals dismissed the petitioner's subsequent application for leave to appeal because the petitioner was not permitted to appeal the denial of a successive motion for relief from judgment, *People v. Dibble*, No. 332961 (Mich. Ct. App. May 26, 2016), and the Michigan Supreme Court denied leave to appeal, *People v. Dibble*, 500 Mich. 924, 888 N.W.2d 114 (2017).

On February 22, 2016, the petitioner filed the current habeas corpus petition. Although he did not sign or date it, or fill out the sections describing the grounds for relief, he attached his appellate attorney's appeal brief and appears to be raising the same two claims of error asserted on direct appeal:

> I.   The petitioner was denied his right to a fair trial when the prosecutor was allowed to introduce evidence of the prior incidents of misconduct involving his ex-wife and son-in-law [*sic* stepson] when the evidence was offered for an improper purpose and the unfair prejudice outweighed its probative value.
>
> II.  Michigan Compiled Laws § 768.27a is an unconstitutional *ex post facto* law because it allowed the state to convict the petitioner of criminal sexual conduct on less or different evidence than the Michigan Rules of Evidence required at the time of the alleged offense.

The State maintains that the petition is deficient and subject to dismissal because it is unsigned, undated, and time-barred. The Court finds it unnecessary to address these procedural questions.

They are not a jurisdictional bar to review of the merits, *Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations), and "federal courts are not required to address [them] before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for

obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A.

The petitioner's first claim is styled as a due process violation. He says that the admission of three species of other-acts evidence deprived him of a fair trial. The challenge addressed the evidence of misconduct with the petitioner's ex-wife, his stepson, and other uncharged acts with the victim.

The state trial court confronted the issue in a pretrial motion. The hearing transcript suggests that the prosecutor and defense counsel were talking past each other, with the State asserting that the evidence was admissible under Michigan Evidence Rule 404(b), and defense counsel contending that the prosecution could *not* rely on the recently enacted statute — Michigan Compiled Laws § 768.27a — to support admission. In the end, the trial judge ruled that the evidence was admissible under both Rule 404(b) and section 768.27a.

There is a substantial difference between these two provisions. Rule 404(b) prohibits the use of other-acts evidence to prove a defendant's character or to support an inference that he tends to act in a way consistent with the charged crime. *See People v. VanderVliet*, 444 Mich. 52, 74, 508 N.W.2d 114, 126 (1993) ("[t]he evidence must be relevant to an issue other than propensity under MRE 404(b)) (citing *Huddleston v. United States,* 485 U.S. 681, 687 (1988)). Section 768.27a, on the other hand, states that where a defendant is charged with certain crimes against a

minor, "evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing *on any matter to which it is relevant*." Mich. Comp. Laws § 768.27a(1) (emphasis added). Michigan courts construe that language as allowing evidence of other conduct to prove a propensity inference otherwise prohibited by Rule 404(b). *See People v. Watkins*, 491 Mich. 450, 455-56, 818 N.W.2d 296, 299 (2012). Another section of the statute allows evidence of prior acts of violence to prove propensity, among other things, in domestic assault cases. *See* Mich. Comp. Laws § 768.27b.

On direct appeal, the court of appeals brushed aside the challenge based on Rule 404(b) and held that the evidence was admissible under section 768.27a. *People v. Dibble*, 2010 WL 4628667, at *2. The court held that using the other-acts evidence to prove propensity was proper, and the probative value of that evidence was not outweighed by unfair prejudice. *Ibid.*

An alleged violation of state evidence Rule 404(b) is not cognizable on habeas review. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

As noted, however, the petitioner presents this argument in the context of the Due Process Clause. Nonetheless, the Supreme Court has declined to hold that the admission of other-acts evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990).

As a matter of evidence law, the use of other acts evidence to prove a character trait consistent with a defendant's propensity to commit a crime is contrary to firmly established principles of Anglo–American jurisprudence. The ban on such evidence, which presently is found

in Federal Rule of Evidence 404(a) and (b) (and in Michigan's counterpart), has a distinguished historical pedigree. *See, e.g., Harrison's Trial,* 12 How. St. Tr. 834, 864 (Old Bailey 1692) (Holt, C.J.) (excluding propensity evidence in a murder trial, remarking, "Hold, what are you doing now? Are you going to arraign his whole life? Away, away, that ought not to be; that is nothing to the matter"); *Hampden's Trial,* 9 Cob. St. Tr. 1053, 1103 (K.B. 1684) (Withins, J.) (excluding evidence of prior forgeries from the trial of a man accused of forgery, explaining that the evidence would "rak[e] into men's course of life, to pick up evidence that they cannot be prepared to answer to"); *see also Boyd v. United States,* 142 U.S. 450, 458 (1892) (finding that admission of prior crimes committed by defendants so prejudiced their trial as to require reversal); *Rex v. Doaks,* Quincy's Mass. Reports 90 (Mass. Super. Ct. 1763) (excluding evidence of former acts of lasciviousness from the trial of a defendant accused of keeping a bawdy house); *see generally* Louis M. Natali, Jr. & R. Stephen Stigall, *"Are You Going to Arraign His Whole Life?": How Sexual Propensity Evidence Violates the Due Process Clause,* 28 Loy. U. Chi. L.J. 1, 12-23 (1996).

However, although the Supreme Court has found "no question that propensity would be an 'improper basis' for conviction," *Old Chief v. United States,* 519 U.S. 172, 182 (1997), it has declined to hold that similar others-acts evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling,* 493 U.S. at 352-53 (1990) (finding that the presentation of evidence of another robbery for which the defendant had previously been tried and acquitted did not violate fundamental conceptions of justice). Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Id.* at 352. Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."

*Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003); *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials involving sexual misconduct).

The petitioner's first issue will not support issuance of a writ of habeas corpus.

B.

The petitioner's remaining claim alleges that the application of section 768.27a to his case violated his rights under the *Ex Post Facto* Clauses of the Michigan and Federal Constitutions. He notes that the statute became effective on January 1, 2006, but he was charged with acts that were alleged to have occurred in 2005. He contends that because the statute allowed evidence of other acts of misconduct to prove character and propensity, where those inferences were prohibited before, the application of this statute to his case permitted the prosecution to use less or different evidence than the law required at the time of his alleged crimes.

"The Constitution prohibits both federal and state governments from enacting any '*ex post facto* Law.'" *Peugh v. United States*, 569 U.S. 530, 538 (2013) (quoting U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10). For a criminal law to be *ex post facto*, it "must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (citations omitted). The *ex post facto* clause prohibits four categories of laws:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. 386, 390 (1798) (seriatim opinion of Chase, J.)

The Michigan Court of Appeals, citing state court precedent, rejected the petitioner's *ex post facto* argument because it believed that the statute "does not lower the quantum of proof or value of the evidence needed to convict a defendant." *People v. Dibble*, 2010 WL 4628667, at *4 (quoting *People v. Pattison*, 276 Mich. App. at 618-19, 741 N.W.2d 558, 561-62 (2007)). That holding is responsive to the petitioner's argument that section 768.27a requires "less . . . testimony" to convict a defendant of a sex crime, compared to the quantum of proof demanded before the statute was passed. But on its face, it does not engage with the idea that the statute allows "different[] testimony," since before section 768.27a's enactment propensity evidence was forbidden, and afterward it is allowed. *Id.*

The Supreme Court's most recent discussion of *Calder*'s fourth category of *ex post facto* laws is in *Carmell v. Texas*, 529 U.S. 513, 530-31 (2000). There, the Court held that a Texas law that authorized conviction of certain sex crimes on the victim's testimony alone, where previously the law required the victim's testimony to be corroborated by other evidence to convict the offender, violated the *Ex Post Facto* Clause when applied retroactively to the petitioner in that case. *Id.* at 552. The Court explained that

> [a] law reducing the quantum of evidence required to convict an offender is as grossly unfair as, say, retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof. In each of these instances, the government subverts the presumption of innocence by reducing the number of elements it must prove to overcome that presumption; by threatening such severe punishment so as to induce a plea to a lesser offense or a lower sentence; or by making it easier to meet the threshold for overcoming the presumption. Reducing the quantum of evidence necessary to meet the burden of proof is simply another way of achieving the same end.

*Id.* at 532-33 (footnote omitted). However, the Court was quick to note:

> We do not mean to say that every rule that has an effect on whether a defendant can be convicted implicates the *Ex Post Facto* Clause. Ordinary rules of evidence, for example, do not violate the Clause. Rules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any given

> case. More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption.

*Id.* at 533 n.23.

Section 768.27a, although allowing "different[] testimony" in a sexual misconduct case than before its enactment, is one of those rules of evidence "that has an effect on whether a defendant can be convicted" but does not "implicate[] the *Ex Post Facto* Clause." That is because "[e]vidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained." *Id.* at 546. The Supreme Court's cases draw a definite, albeit somewhat opaque, distinction between what must be proved to sustain a conviction and how it must be proved, and the admissibility of evidence to prove it. Describing *Calder*'s fourth category, the Supreme Court explained: "As cases subsequent to *Calder* make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes." *Collins v. Youngblood*, 497 U.S. 37, 43 n.3 (1990) (citing *Thompson v. Missouri,* 171 U.S. 380, 386-87 (1898) (rejecting *ex post facto* challenge to retroactive application of statute making admissible handwritten documents as handwriting exemplars), and *Hopt v. Utah,* 110 U.S. 574, 588-90 (1884) (upholding retroactive application of statute making felons competent to testify); *see also Frazier v. Huffman*, 343 F.3d 780, 801 (6th Cir.), *opinion supplemented on denial of reh'g,* 348 F.3d 174 (6th Cir. 2003) (discussing amendment to Ohio Evidence Rule 410).

Other cases have also rejected similar *ex post facto* challenges to the retrospective application of new laws that permit the introduction of evidence of past sexual misconduct to prove a defendant's propensity to commit the charged offense, on the ground that the laws do not lower the quantum of evidence or burden of proof required to sustain a sexual misconduct conviction.

*See Miracle v. Haas*, No. 2:15-CV-10562, 2016 WL 1583807, at *5 (E.D. Mich. Apr. 20, 2016) (collecting cases).

If section 768.27a (or 768.27b) allowed the petitioner to be convicted of the charged crimes *because* he had committed the prior acts, the result might be different. But that is not what happened here. The trial court reminded the jurors that the petitioner was not on trial for domestic violence involving his ex-wife, for improper sexual conduct with his former stepson, or for improper sexual conduct beyond the three charges involving the complainant. Trial Tr. Vol. III at 59-61. The court then explained that, if the jurors believed the testimony of the petitioner's ex-wife and former stepson, they could consider the evidence only to decide whether it showed that the petitioner had a reason to commit the crime, intended to commit the crime for which he was charged, acted purposely and not by accident or mistake or because he misjudged the situation, and whether he had a plan, system, or characteristic scheme that he used before or after the crimes. *Id*. at 59-60.

The court also said that if the jurors believed the testimony about the uncharged acts against the complainant, they could use the evidence only for the limited purpose of judging the believability of the testimony on the acts for which the petitioner was on trial. *Id*. at 60-61. And as to all the prior acts, the court charged the jurors not to consider the evidence for the purpose of deciding whether it showed the petitioner was a bad person or likely to commit the crimes, even though section 768.27a would have allowed that inference. The court also said that the jurors should not convict the petitioner because they thought he was guilty of other bad conduct. *Ibid*.

Because juries are presumed to follow a trial court's instructions to them, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), there is no showing here that application of section 768.27a lessened the prosecutor's burden of proof or otherwise violated the *Ex Post Facto* clause.

The state courts' decisions on this issue did not contravene or misapply Supreme Court precedent. Therefore, the petitioner is not entitled to a writ of habeas corpus on this issue.

III.

Neither of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   February 4, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on February 4, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---